# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2015

Lyle W. Cayce
Clerk

No. 14-20253

VASILIOS ZANNIKOS, Individually and On Behalf of Others Similarly Situated, JAMES CORMIER,

Plaintiffs-Appellees-Cross Appellants

WILLIAM CORMIER, SR.,

Plaintiff-Cross Appellant

v.

OIL INSPECTIONS (U.S.A.), INCORPORATED; STEPHEN TAYLOR,

Defendants-Appellants-Cross Appellees

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-2508

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

The plaintiffs sued Oil Inspections (U.S.A.), Inc., their former employer, for alleged violations of the Fair Labor Standards Act's ("FLSA") overtime

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

provisions.  On cross-motions for summary judgment, the district court held that the plaintiffs did not fall within the administrative exemption to the FLSA, but that the "highly compensated employee" exemption applied to Plaintiff Vasilios Zannikos.  It also held that all of the plaintiffs' claims were subject to the FLSA's two-year statute of limitations for non-willful violations.  Both parties appealed.  We AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

Oil Inspections specializes in loss-control operations in connection with oil cargo transfers.  It oversees and monitors transfers of oil between trading partners to ensure that the oil is transferred in accordance with industry standards and customer specifications.  Because the failure to monitor these transfers adequately can result in product losses, accurate monitoring is a matter of financial significance to the trading partners.

Oil Inspections employed Zannikos, James Cormier, and William Cormier ("plaintiffs") as marine superintendents until January 2012, May 2011, and February 2011, respectively.  Their responsibilities included observing oil transfers to verify that performance was accurate, legal, and safe.  They monitored the loading and unloading of cargo and reported any errors or losses; monitored and reported on transfers' compliance with Oil Inspections' safety policies and nationally recognized safety standards; and performed quality control functions, including inspecting loading and discharge equipment, identifying problems with equipment safety or calibration, and recommending remedial measures to ship personnel or Oil Inspections.

The plaintiffs also oversaw the work of independent inspectors during the transfer process and inspected certain elements of transfers themselves.  Their responsibilities included inspecting cargo tanks prior to and during transfers to ensure the absence of contaminants and proper minimization of

sediment; overseeing the sampling of cargo by independent inspectors prior to transfers to ensure that they used properly calibrated gear and properly assessed cargo temperatures; inspecting onshore tank placement to ensure that it was in the "critical zone" (*i.e.*, the gap above the tank met customer specifications); and examining "line displacement," or fluid flow through the line, to ensure that no oil was lost during the transfer.

Finally, the marine superintendents oversaw "line blending," during which a number of onshore components, such as oil and gas, are combined and moved onto a ship based on specifications relevant to overseas markets. They assured that tanks were prepared properly for such transfers and that components were blended according to the proper ratios.

In August 2012, Zannikos brought suit against Oil Inspections and its president, Stephen Taylor, alleging violations of the FLSA's overtime provisions. In March 2013, James and William Cormier consented to join the suit pending collective or class action certification. In May 2013, the district court, pursuant to 29 U.S.C. § 216(b), conditionally certified a collective action of marine superintendents who were employed by Oil Inspections during the prior three years and had not signed arbitration agreements. No one besides Zannikos and the two Cormiers joined the collective action.

All parties moved for summary judgment on various issues. The district court held, *inter alia*, that: (1) the plaintiffs were not subject to the administrative exemption to the FLSA's overtime provisions, (2) Plaintiff Zannikos was subject to the "highly compensated employee" exemption to the overtime provisions beginning in January 2011, and (3) the plaintiffs' claims were subject to the FLSA's two-year statute of limitations for non-willful violations.

No. 14-20253

Following the summary-judgment ruling, Oil Inspections filed a motion for reconsideration, which the court denied. The parties then settled the remaining claims while reserving their right to appeal. The district court entered a final judgment recognizing the settlement. The parties timely appealed.

DISCUSSION

We review a grant of summary judgment *de novo*, applying the same standards as the district court. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). Summary judgment is proper "when the pleadings and evidence demonstrate that no genuine [dispute] of material fact exists and the movant is entitled to judgment as a matter of law." *Id.* (citation and quotations omitted). The movant bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Id.* The burden then shifts to the non-movant, who must demonstrate the existence of such a dispute. *Id.* We construe all evidence in the light most favorable to the non-movant. *Id.*

The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Section 216(b) of the statute creates a cause of action for employees who claim their employers violated these provisions. Certain employees, however, are exempt from the overtime requirements. Whether an employee falls within an exemption is a question of law; the amount of time the employee devotes to particular duties, as well as the significance of those duties, are questions of fact. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

4

No. 14-20253

Oil Inspections claims that the district court erred by concluding that the plaintiffs did not fall within the administrative exemption to the FLSA's overtime requirements. The plaintiffs find error in the district court's conclusion that Zannikos fell within the "highly compensated employee" exemption to the FLSA's overtime requirements and its application of the two-year statute of limitations for non-willful violations to Oil Inspections' violations rather than the three-year statute of limitations for willful violations.

We examine each of these arguments.

I.    *Administrative Exemption to the FLSA's Overtime Provisions*

The FLSA's overtime provisions "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). Employees fall within the administrative exemption if they meet the following criteria:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;
(2) Whose primary duty[1] is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

---

[1] An employee's "primary duty" is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). A non-exhaustive list of factors courts consider when determining an employee's primary duty include: (1) "the relative importance of the exempt duties as compared with other types of duties," (2) "the amount of time spent performing exempt work," (3) "the employee's relative freedom from direct supervision," and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

No. 14-20253

The plaintiffs concede that Oil Inspections paid them more than $455 per week but claim the district court erred in concluding that their primary duties satisfied the second element of the exemption.  Oil Inspections, in contrast, argues that the court correctly determined that the plaintiffs satisfied the second element but erred in holding that they did not satisfy the third.

*a.  Second Element: Performance of Office or Non-Manual Work*

To qualify for the administrative exemption, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." § 541.201(a).  The former category includes "work in functional areas such as . . . quality control; . . . safety and health; . . . [and] legal and regulatory compliance . . . ." § 541.201(b).  It also includes "work directly related to the management or general business operations of the employer's customers." § 541.201(c).

The plaintiffs argue that the district court erred in concluding that they performed non-manual work that directly related to the general business operations of Oil Inspections' customers.  They claim that their work was "more in line with someone working in a production line for [Oil Inspections'] customers rather than that of one implementing, creating, or administering policies."  The clearest example they offer in support of their argument is their supervision of the "line blending" process, which involves producing gas/oil blends for sale overseas.  The plaintiffs assert that, since line blending results in the production of a "new petroleum product," their role in that process constituted production rather than administration.

These arguments are unconvincing.  The plaintiffs' work, including that relating to line blending, primarily included supervision, quality control, and

ensuring compliance with applicable standards.  They did not transfer oil, blend oil, or manufacture or sell petroleum products themselves.  Instead, they oversaw these functions and provided Oil Inspections' customers with inspection and operational support services.  Such services are not considered production.  *See* § 541.201(c).  Moreover, the plaintiffs' primary duties included work in several functional areas explicitly listed as administrative in Section 541.201(b), including quality control, safety, and legal and regulatory compliance.  Accordingly, the district court did not err in concluding that their work constituted administration rather than production.

The plaintiffs also argue that employees who produce the precise service offered to customers by their employer are engaged in production, citing *Cotten v. HFS-USA, Inc.*, 620 F. Supp. 2d 1342 (M.D. Fla. 2009).  Thus, because they "were hired to produce the very product Oil [Inspections] sells and markets," which is "oversight," they claim that their functions necessarily constitute production.  This argument is analytically distinct from the plaintiffs' claim that they effectively produced petroleum products for customers.  In effect, the plaintiffs are arguing that, even if their services do not constitute production in relation to Oil Inspections' customers, it is sufficient that they constitute production in relation to Oil Inspections.  The district court disagreed, noting that, in *Cotten*, "the court only considered whether [the employee's] duties were related to the management of the employer, not the customer."  The court concluded that this approach "necessarily conflict[s] with 29 C.F.R. § 541.201(c)" and leads to an incomplete analysis.  We agree.

The second element of the administrative exemption applies to employees "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer *or* the employer's customers . . . ."  29 C.F.R. § 541.200(a)(2)

(emphasis added); *see also* § 541.201(a). Accordingly, employees satisfy the second element if their work directly relates to the management of either their employer or their employer's customers. Thus, because we have concluded that the plaintiffs performed non-manual work directly related to the management of Oil Inspections' customers, whether their work directly related to the management of Oil Inspections is inconsequential.

Other regulatory provisions designed to clarify the second element of the administrative exemption support this conclusion. In particular, Section 541.201(c) states that "[a]n employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers." That provision demonstrates that the performance of functions directly related to the management of an employer's customers is sufficient, rather than merely necessary, to satisfy the second element of the exemption.

Moreover, the plaintiffs' interpretation would render the administrative exemption largely meaningless. Many — perhaps most — employees whose primary duties directly relate to the management of customers perform the precise services offered by their employers. For example, tax experts, financial consultants, and management consultants perform the precise services offered to customers by the accounting and consulting firms for which they work. Thus, under the plaintiffs' interpretation, these employees should not fall under the administrative exemption. This result, however, conflicts with Section 541.201(c), which explicitly states that such employees satisfy the second element of the exemption. Likewise, the plaintiffs' interpretation would insulate employees who perform work in the "functional areas" described in Section 541.201(b) from the exemption so long as the employer is in the

8

business of providing those services.   This result is also contrary to the regulatory text.

We conclude that the district court correctly categorized the plaintiffs' work as office or non-manual work directly related to the management or general business operations of Oil Inspections or its customers under the second element of the administrative exemption.

### b. *Third Element: Exercise of Discretion and Independent Judgment*

The administrative exemption also requires that an employee exercise discretion and independent judgment with respect to matters of significance, which "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  § 541.202(a).  An employee need not exercise final decision-making authority to meet this standard.  *See* § 541.202(c); *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). Nevertheless, the exercise of discretion requires "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  29 C.F.R. § 541.202(e).

Oil Inspections argues that the district court erred in concluding that the plaintiffs did not exercise independent judgment.  In support of this argument, Oil Inspections analyzes ten non-exhaustive factors that courts often consider when determining whether an employee exercises the requisite discretion.  *See* § 541.202(b).  It concludes that the plaintiffs met eight of the factors, and that this is more than sufficient to demonstrate independent judgment.[2]  In the

---

[2] Oil Inspections claims that satisfying two factors is sufficient to demonstrate independent judgment, citing 69 Fed. Reg. 22,143-44 (Apr. 23, 2004).  The authority for that argument is weak.  Both Fifth Circuit opinions cited in the Federal Register commentary

alternative, it claims there was not enough evidence to decide the issue at the summary judgment stage.

We note at the outset that there are striking similarities between the plaintiffs' work and that of inspectors, examiners, and graders, who are generally non-exempt employees. *See* § 541.203(g)-(j). "Such employees usually perform work involving the comparison of products with established standards which are frequently catalogued." § 541.203(h); *see also* § 541.203(g). They "gather[] factual information, apply[] known standards or prescribed procedures, determin[e] which procedure to follow, [and] determin[e] whether the prescribed standards or criteria are met." § 541.203(j). As we have discussed, the plaintiffs' primary duties included observing and inspecting oil transfers to determine whether they complied with relevant standards and specifications set forth by Oil Inspections and its customers. In carrying out these duties, they utilized extensive checklists, which catalogued the procedures they followed. Such functions overlap significantly with those characterized as generally non-administrative in Section 541.203.

---

upon which Oil Inspections relies predate the compilation of all these factors into Section 541.202(b), which occurred in August 2004. *See Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261 (5th Cir. 2000); *Bondy v. City of Dal.*, 77 F. App'x 731 (5th Cir. 2003). Additionally, in both opinions we detailed the employees' duties and identified many areas of discretion — not just two — before concluding that the employees exercised independent judgment. *See Cowart*, 213 F.3d at 267; *Bondy*, 77 F. App'x at 733. The factors were meant to facilitate evaluations of discretion in "light of all the facts involved . . . ." 29 C.F.R. § 541.202(b). Placing dispositive weight on only two factors would hinder a broader assessment. Moreover, we have often declined to make an individual evaluation of the factors, which suggests that they are meant to guide our analysis but not to dictate its result. *See Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585-86 (5th Cir. 2006); *McKee v. CBF Corp.*, 299 F. App'x 426, 429-31 (5th Cir. 2008). We make no holding, though, as to whether there is a minimum number of factors that need to be met, as even the suggested minimum is not satisfied.

No. 14-20253

Despite these similarities, Oil Inspections argues that certain features of the plaintiffs' duties, when analyzed in the context of the Section 541.202(b) factors, are distinguishable from those of inspectors. According to Oil Inspections, those distinctions are sufficient to demonstrate independent judgment. Because "[t]he phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises," § 541.202(b), we will examine the Section 541.202(b) factors that Oil Inspections relied upon in its summary judgment motion and motion for reconsideration.

The first factor concerns the employee's "authority to formulate, affect, interpret, or implement management policies or operating practices." § 541.202(b). Oil Inspections does not argue that the plaintiffs "formulated" or "affected" management policies. Instead, it argues that they "interpreted" and "implemented" policies by determining whether transfers complied with the proper specifications and informing Oil Inspections, its customers, and independent inspectors of any deficiencies. This argument is unconvincing, for two reasons. First, the functions identified by Oil Inspections, such as analyzing whether pump cleanliness, pump calibration, and critical-zone size met applicable standards, simply constitute the "appl[ication of] . . . specific standards described in manuals or other sources." § 541.202(e). They do not entail evaluating alternative courses of action after considering various possibilities. *See* § 541.202(a). Second, the plaintiffs' job descriptions, questionnaires, and depositions suggest that they were typically required to confer with Oil Inspections before making recommendations in the event of noncompliance. Regardless, any advisory power they possessed was based solely on "the development of the facts as to whether there [was] conformity

11

No. 14-20253

with the prescribed standards." § 541.207(c)(2).[3]  Accordingly, the plaintiffs did not formulate, affect, interpret, or implement management policies or operating practices.

Oil Inspections argues that the plaintiffs satisfied the second factor, which asks "whether the employee carries out major assignments in conducting the operations of the business," § 541.202(b), because their work was "significant" to customers and "very important" to their financial interests. It is unclear whether, as Oil Inspections implies, all activities carrying financial import constitute "major assignments."  Moreover, while the plaintiffs' services may *relate* to business operations, *see* § 541.201(b)-(c), Oil Inspections has not demonstrated that mere observation and inspection constitutes *carrying out* operations.  Indeed, it would seem strange to conclude that an employee who meets the second element of the administrative exemption necessarily meets portions of the third element.  In fact, the regulations generally counsel against such a conclusion. *See* §§ 541.202(a), (e); 541.203(g).  But whatever the exact contours of the second Section 541.202(b) factor, the regulations and our case law make clear that employees do not exercise discretion and independent judgment merely because their work bears financial significance. *See* § 541.202(f); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1231 (5th Cir. 1990).  Accordingly, Oil Inspections' claims regarding the

---

[3] The Department of Labor ("DOL") revised the FLSA overtime exemption regulations in August 2004.  As a result, Section 541.202 superseded Section 541.207.  But, as the DOL explained, the revisions were meant to "consolidate and streamline" the former regulations and to be "consistent with" the former regulations and case law relating to the administrative exemption. *See* 69 Fed. Reg. 22,122, 22,126, 22,139, 22,144-45 (Apr. 23, 2004).  As a result, this court and other circuits have cited from both sets of regulations, including Section 541.207, when doing so proves informative for purposes of the case. *See, e.g.*, *Cheatham*, 465 F.3d at 585; *Robinson-Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 892 n.6, 893-95 (D.C. Cir. 2010); *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 869-70, 873-75 (7th Cir. 2008).

importance of the plaintiffs' work, without more, do not suffice to satisfy the third element of the administrative exemption.

For essentially the same reasons it advances with regard to the second factor, Oil Inspections argues that the plaintiffs performed work affecting customers' business operations to a substantial degree, thereby satisfying the third factor. *See* 29 C.F.R. § 541.202(b). The district court concluded that the plaintiffs satisfied this factor but noted that it addresses only whether an employee's primary duty relates to matters of significance, not whether that duty entails the exercise of discretion and independent judgment. Indeed, the regulations note that "[a]n employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." § 541.202(f); *see also Dalheim*, 918 F.2d at 1231. Thus, as we have already noted, the financial import of the plaintiffs' work does not suffice to satisfy the third element of the administrative exemption.

According to Oil Inspections, the plaintiffs had the "authority to commit the employer in matters that have significant financial impact," which is the fourth factor. *See* 29 C.F.R. § 541.202(b). In support of this contention, Oil Inspections claims that the plaintiffs could instruct customers to delay the commencement of oil transfers, alter the line-blending process, and engage in additional crude-oil washing. We are not convinced. The plaintiffs' evidence, at most, suggests that marine superintendents could issue recommendations regarding delaying, blending, and washing. It does not suggest that they could commit customers to certain actions. In fact, the evidence indicates that the plaintiffs lacked this authority. More importantly, the relevant inquiry is whether an employee could commit the *employer* in ways that had a significant financial impact. Oil Inspections only addresses the plaintiffs' ability to

commit *customers* in the matters it mentions.  The plaintiffs did not have the authority to commit Oil Inspections in matters of significance; they simply had the authority to ensure compliance with standards Oil Inspections had previously developed or agreed to enforce.

Next, Oil Inspections argues that the plaintiffs had "authority to waive or deviate from established policies and procedures without prior approval," which is the fifth factor.  *See id.*  The only example of this authority Oil Inspections offers is the plaintiffs' ability to permit independent cargo inspectors to use ship equipment to conduct their inspections rather than using their own equipment.  As the district court noted, though, Oil Inspections did not point to any policy or manual demonstrating that cargo inspectors were required to use their own equipment.  In fact, Oil Inspections' policies seem to stipulate only that inspectors must use properly calibrated equipment, whatever its source.  Accordingly, Oil Inspections has not shown that the plaintiffs had the authority to deviate from its established procedures.

Oil Inspections does not argue that the plaintiffs satisfied the sixth factor, which concerns an employee's authority to negotiate and bind the company.  *See id.*  The seventh factor involves providing consultation or expert advice to management.  *See id.*  In support of this factor, Oil Inspections states that one of its customer's descriptions of marine superintendents' responsibilities included the use of "experience and expertise."  Job descriptions alone, though, may not suffice to establish that employees render consultation or expert advice.  *Cf.* § 541.2; *Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 724 (5th Cir. 1970).  More importantly, the seventh factor requires the employee to provide expert advice, not merely to utilize expertise.  The expertise to which Oil Inspections refers relates to the inspection of cargo measurement and handling.  Such functions do not amount to offering expert

14

No. 14-20253

advice, but rather to "the use of skill in applying well-established techniques, procedures or specific standards . . . ." 29 C.F.R. § 541.202(e). Any advice offered in conjunction with these functions was necessarily based on "whether there [was] conformity with the prescribed standards." § 541.207(c)(2). As a result, Oil Inspections has not shown that the plaintiffs provided expert advice to its customers.

Oil Inspections does not address the eighth factor, which addresses an employee's role in planning business objectives. *See* § 541.202(b). The ninth factor asks whether an employee investigates and resolves significant matters on behalf of management. *See id.* Oil Inspections argues that the plaintiffs satisfied this factor because they resolved disputes over how much "free water" to leave in oil storage tanks. But the plaintiffs did not investigate matters relating to free water; they merely observed independent inspectors' measurements to determine whether errors were made. Moreover, the plaintiffs' ability to resolve disputes seems to have been limited to informing Oil Inspections or the inspectors of errors based on specified standards and requesting that inspectors re-gauge the free water. The ability to act or report based on specified standards does not constitute the discretionary ability to resolve matters of significance. *See* §§ 541.202; 541.203(g).

Finally, Oil Inspections argues that the plaintiffs met the tenth factor, which looks to whether the employee represents the company in resolving customers' complaints, disputes, and grievances. *See* § 541.202(b). Oil Inspections claims that the plaintiffs provided assistance when disagreements arose over pumping logs, the amount of free water in oil storage tanks, and the amount of oil left onboard ships. The plaintiffs' role in disputes over free water and oil left onboard ships has already been discussed. Their role in disputes over pumping logs was not markedly different. As in other areas, their

15

No. 14-20253

responsibilities involved ensuring compliance with applicable standards and reporting events of noncompliance. Again, the ability to express disagreements based on specified standards does not constitute the discretionary ability to resolve disputes. *See* §§ 541.202; 541.203(g).

The district court correctly concluded that the work performed by marine superintendents did not extend beyond the application of skill in applying specified standards and thus did not satisfy the "independent judgment" element of the administrative exemption. An analysis of the Section 541.202(b) factors only reinforces this conclusion.

Finally, in addition to the Section 541.202(b) factors, Oil Inspections argues more generally that precedent from this circuit and the Ninth Circuit supports its argument that marine superintendents exercised the requisite independent judgment to satisfy the third element of the administrative exemption. *See Cheatham*, 465 F.3d at 585-86; *Bondy*, 77 F. App'x at 733; *O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1453-54 (9th Cir. 1988).

As to *O'Dell*, the Ninth Circuit concluded in a later opinion that it "ignored the [FLSA] regulations' distinction between the use of discretion and the application of skill, reasoning that such regulations are simply guides that do not bind the court or limit its discretion. . . . That view has since been rejected by both the Supreme Court and the Ninth Circuit."[4] *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1129 (9th Cir. 2002) (citations omitted).

---

[4] To the extent that *O'Dell* has not been completely overruled, it is nevertheless distinguishable from this case. The employees in *O'Dell* exercised discretion by, among other things, "making recommendations for waivers of specifications" and "help[ing] develop guidelines for inspection procedures." *O'Dell*, 856 F.2d at 1453. Oil Inspections has not claimed that the plaintiffs assisted in developing its guidelines. Moreover, we have rejected Oil Inspections' claim that the plaintiffs were permitted to waive specifications because they allowed independent cargo inspectors to use ship equipment to conduct their inspections rather than their own equipment.

16

Additionally, the marine superintendents are not analogous to the employees in *Cheatham* and *Bondy*.  In *Bondy*, we held that event coordinators met the third element of the administrative exemption.  *See* 77 F. App'x at 733.  For support, we relied on event coordinators' ability to plan most aspects of convention-center events, negotiate with clients on behalf of their employer, address clients' requests and problems during events, recommend excusing noncompliance with policies, recommend cancelling events, and help their employer revise its policies.  *See id.*  We agree with the reasoning in *Bondy*.  Nevertheless, Oil Inspections has not demonstrated that the plaintiffs planned oil transfers, negotiated with clients, excused noncompliant action, recommended canceling transfers, or helped Oil Inspections reformulate its policies.  Thus, *Bondy* is readily distinguishable.

In *Cheatham*, we noted that "consult[ation] with manuals or guidelines does not preclude the[] exercise of discretion and independent judgment."  465 F.3d at 585 (citation omitted).  We then enumerated the ways in which the insurance adjusters we were considering exercised discretion despite consulting claims manuals, including "determining coverage, conducting investigations, determining liability and assigning percentages of fault to parties, evaluating bodily injuries, negotiating a final settlement, setting and adjusting reserves based upon a preliminary evaluation of the case, investigating issues that relate to coverage and determining the steps necessary to complete a coverage investigation, and determining whether coverage should be approved or denied."  *Id.* at 586; *see also id.* at 585 n.7.  Such investigatory and evaluative functions clearly extend beyond the observation of processes, enforcement of standards, and reporting of noncompliance.  Indeed, while claims manuals may inform assignments of fault, injury evaluations, settlement negotiations, and other aspects of the

claims process, they seldom dictate the results in absolute terms or obviate the need to evaluate possible courses of action. *See McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1001 (8th Cir. 2003). The plaintiffs' primary duties, in contrast, did not entail making discretionary decisions based on guidelines but rather strictly applying guidelines and reporting noncompliance. Accordingly, Oil Inspections has not shown that the plaintiffs exercised discretion comparable to the insurance adjusters in *Cheatham*.

The district court correctly concluded that the plaintiffs' primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

## II.    *"Highly Compensated Employee" Exemption to the FLSA*

The FLSA provides that "[a]n employee with total annual compensation of at least $100,000 is deemed exempt . . . if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . ." 29 C.F.R. § 541.601(a). To qualify for this exemption, the employee's primary duties must include performing office or non-manual work. § 541.601(d). The employee need not meet all of the requirements of executive, administrative, or professional employees, however. *See* § 541.601(c). Moreover, "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." *Id.*

The plaintiffs concede that Zannikos' compensation in 2011 was $100,000.08,[5] but maintain that his primary duties did not include performing

---

[5] In the district court the plaintiffs argued that Oil Inspections effectively paid Zannikos less than this amount because he incurred uncompensated job-related expenses, which must be subtracted from the employee's wages for purposes of the FLSA. *See* § 531.35.

office or non-manual work directly related to the management or general business operations of the employer or the employer's customers. In discussing the administrative exemption above, we concluded that Zannikos primarily performed non-manual work directly related to the management or general business operations of Oil Inspections' customers. Thus, the district court correctly concluded that Zannikos fell within the "highly compensated employee" exemption to the FLSA's overtime requirements.

### III.    *FLSA's Two-Year Statute of Limitations for Non-Willful Violations*

FLSA claims are subject to a two-year statute of limitations for ordinary violations and a three-year period for willful violations. 29 U.S.C. § 255(a). The plaintiff bears the burden of demonstrating willfulness. *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990). Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable. *See McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 132-33 (1988); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127-28 (1985); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990). Rather, an employer's violation is willful only if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." *McLaughlin*, 486 U.S. at 133.

The plaintiffs argue that Oil Inspections recklessly disregarded whether marine superintendents were exempt from the FLSA. They allege that Oil Inspections knew of the FLSA's potential applicability, as demonstrated by its employee handbook; failed adequately to research the statute's applicability;

---

The plaintiffs do not re-argue that point on appeal; it is therefore waived. *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

and failed to consult with attorneys or the DOL on the matter. These allegations do not suffice to demonstrate willfulness.

An employer who "act[s] without a reasonable basis for believing that it was complying with the [FLSA]" is merely negligent. *Id.* at 134-35. So too is an employer who fails to seek legal advice regarding its payment practices. *See id.*; *Mireles*, 899 F.2d at 1416. Willfulness has been found when the evidence demonstrated that an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention.[6] *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 n.24 (5th Cir. 2009). The plaintiffs have failed to put forth evidence that Oil Inspections knew that it was violating the FLSA or recklessly disregarded a potential violation. Accordingly, Oil Inspections did not willfully violate the FLSA and the two-year statute of limitations applies to the plaintiffs' claims.

AFFIRMED.

---

[6] The plaintiffs rely on an opinion from the Eastern District of Arkansas for the proposition that the failure to research in a meaningful way the applicability of the FLSA or to consult on the FLSA may constitute willfulness. *See Brown v. L & P Indus. LLC*, No. 5:04CV0379JLH, 2005 WL 3503637, at *10-11 (E.D. Ark. Dec. 21, 2005). The *Brown* court, though, found that the employer willfully violated the FLSA by failing to take such measures *after* having been informed that its employees were owed overtime. *See id.* at *10. That is not the case here. Moreover, to the extent that *Brown* or the other authorities cited by the plaintiffs to the same effect conflict with *McLaughlin* and our decisions interpreting it (discussed above), *McLaughlin* and our decisions control.