# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-31264

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2020

Lyle W. Cayce
Clerk

DANIEL G. SMITH,

> Plaintiff - Appellant

v.

OCHSNER HEALTH SYSTEM; OCHSNER CLINIC FOUNDATION,

> Defendants - Appellees

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The plaintiff sued his former employer for unpaid overtime wages under the Fair Labor Standards Act. The defendants claimed the plaintiff was not entitled to any additional pay because he was exempt as a highly compensated administrative employee. The district court granted the defendants' motion for summary judgment. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2001, Daniel Smith was hired as an organ procurement coordinator at Ochsner Health System, a nonprofit health care provider in Louisiana. Smith never graduated from high school. He has no advanced

No. 18-31264

degrees, licenses, or certifications. As a procurement coordinator, Smith acted as the first line of communication between the hospital and the Louisiana Organ Procurement Agency when organs became available. His job duties included responding to calls at any time of the day or night regarding organs being offered to the hospital for transplant purposes, evaluating the medical charts and medical history of the donors, verifying the donors' consent, communicating pertinent information about the donors to the surgeons and obtaining the surgeons' acceptance of the organs, preserving and arranging for the organs' transportation, and completing any associated reports for filing.

When relaying organ information to surgeons, an organ procurement coordinator provides basic information about potential recipients. When an organ is first offered, the coordinator has the authority to enter a "provisional yes" into the online system to accept the organ for a patient, before talking to a surgeon. Organ procurement coordinators also organize the transportation of the organs. The coordinator gathers all needed supplies and drives the team to the airport, then goes into the operating room where the organ recovery takes place. Afterward, the coordinator records pertinent information related to the procedure and travels back to Ochsner with the organ. As a group, the organ procurement coordinators are responsible for taking their own inventory and ordering supplies based on expected need.

Smith testified in a deposition that when he started at Ochsner, he was paid a salary, a set hourly rate for the on-call time, and his regular hourly rate for hours worked above 40 per week as opposed to time and a half. In 2012, Smith's base salary was significantly raised, and the method for computing his payments changed as well. Smith did not receive overtime or on-call pay, but the result was that he received about the same amount of pay as before. From 2014 until he resigned in 2017, his annual salary surpassed $120,000. Smith alleges that "[t]he physical demands and stress caused by the abusive

2

No. 18-31264

workloads and intolerable conditions caused Mr. Smith to seek medical attention, be put on short and long-term leave, and eventually forced Mr. Smith to resign his employment."

Smith's complaint asserts that in mid-September 2017, he sent Ochsner a letter that demanded "all of his owed wages and overtime," but Ochsner did not respond. On September 29, 2017, Smith filed suit in the United States District Court for the Eastern District of Louisiana, claiming violations of the Fair Labor Standards Act. *See* 29 U.S.C. § 207. The complaint does not identify a specific time period covered by his claims.

On September 26, 2018, Ochsner moved for summary judgment on its affirmative defense that it was not required to pay Smith overtime because Smith was statutorily exempt as a "highly compensated" and "administrative" employee. The district court concluded that Ochsner did not carry its burden to establish Smith was an "administrative" employee, but the court determined Smith was a "highly compensated" employee. Consequently, it granted summary judgment in favor of Ochsner. Smith timely appealed.

## DISCUSSION

We review a summary judgment *de novo*, applying the same standards as the district court. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001). To succeed on summary judgment in reliance on an affirmative defense, the moving party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The outcome of this appeal turns on whether the district court properly held that Smith was exempt from the statutory mandate that employers provide overtime compensation for employees. 29 U.S.C. § 207(a)(1). The exemptions to that mandate are listed in 29 U.S.C. § 213. Courts are to

3

No. 18-31264

interpret them by giving a "fair reading," neither a broad nor a narrow one. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

Whether an employee is within an exemption is a question of law, but how an employee spends his working time is a question of fact. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). Inferences about the nature of an employee's work are also treated as questions of fact. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990). The employer has the burden of proof on a claimed exemption. *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999).

## I.     *The administrative capacity exemptions*

An individual "employed in a bona fide executive, administrative, or professional capacity" is exempt. § 213(a)(1). Ochsner argues for application of the exemption for employment in an administrative capacity. There are two forms of that exemption. First, the standalone administrative exemption was created by statute and defined by regulation. *Id.*; 29 C.F.R. § 541.200(a). The second is the "highly compensated employee" ("HCE") exemption, which was created by regulation in 2004. § 541.601; Defining and Delimiting the Exemptions, 69 Fed. Reg. 22,122, 22,172 (Apr. 23, 2004). In this case, the district court denied summary judgment on the standalone exemption but granted summary judgment on the HCE exemption. Therefore, that is the exemption we analyze. For clarity, though, we explain both exemptions.

An employee is exempt under the highly compensated category if he or she (1) is annually compensated at least $100,000;[1] (2) "customarily and

---

[1] The compensation requirements under 29 C.F.R. § 541.601 have gone through multiple changes over the past few years, the most recent of which went into effect on January 1, 2020. Overtime Eligibility for White Collar Employees, 84 Fed. Reg. 51,230, 51,249–50, 51,307 (Sept. 27, 2019). This element of the exemption, however, is not contested

regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee," § 541.601(a); and (3) has within his or her primary duties the performing of office or non-manual work, § 541.601(d). The applicable regulation states that the "high level of compensation" that the HCE exemption requires is itself "a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." § 541.601(c).

In contrast to the HCE exemption, the standalone administrative exemption depends only on the employee's primary duty rather than the employee's customary duties. § 541.200(a). The standalone exemption applies when an employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and the "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *Id.*

Smith grounds his argument for error in the burden of proof and the summary judgment standard. He argues that the district court impermissibly weighed the evidence and drew inferences from the facts in favor of movant Ochsner. Smith claims there were three specific errors in the district court's decision. First, there is a genuine factual dispute over whether he customarily and regularly performed exempt duties. Second, there is a genuine factual dispute over whether he primarily performed non-manual labor. Third, there is a genuine factual dispute over whether his work was directly related to Ochsner's general business operations. We will address all of those as we go through our analysis.

---

in this case, and Smith's salary met the compensation standards in the relevant period and would meet the newest standard.

No. 18-31264

Ochsner emphasizes that the HCE exemption does not require the same level of job-duty scrutinizing as the standalone exemption, § 541.601(c). Ochsner also does not concede the inapplicability of the standalone exemption, and it urges us to affirm on that alternative basis if we are unconvinced on the HCE exemption. *See Mangaroo v. Nelson*, 864 F.2d 1202, 1204 n.2 (5th Cir. 1989) (stating that we may affirm on any basis supported by the record). In addition to defending the legal and factual basis of the district court's ruling, Ochsner argues that Smith waived any argument about primarily performing manual labor.

## II.    *The Highly Compensated Employee exemption*

### A.    *Performance of an exempt administrative employee duty – generally*

To qualify for the HCE exemption, Smith must have performed "any one or more of the exempt duties or responsibilities of an . . . administrative . . . employee." 29 C.F.R. § 541.601(c). Section 541.601(a)(1), in defining the HCE exemption, sends us to Subpart C to find the exempt duties and responsibilities of administrative employees. §§ 541.200–541.204. Section 541.200 lays out two types of exempt duties. The first type is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and the second type is duties involving "the exercise of discretion and independent judgment with respect to matters of significance." § 541.200(a)(2)–(3). As to the first type, the regulations define work "directly related to management or general business operations" as a type of work in which the employee "perform[s] work directly related to assisting with the running or servicing of the business." § 541.201(a). Of the nonexhaustive list of examples of exempt duties directly related to the management or general business operations, the most relevant here are those that Smith allegedly engaged in: "quality control; purchasing;

procurement; . . . legal and regulatory compliance; and similar activities." § 541.201(b).

The breadth of the HCE exemption is shown by the statement that an employee may be exempt even if "the employee does not meet all of the other requirements" for the underlying administrative, executive, or professional exemption. § 541.601(c). The regulation includes an example of an exempt *executive* HCE, who can be an "employee [who] customarily and regularly directs the work of two or more other employees." *Id.* Notably, this hypothetical employee meets only one of the elements in the standalone executive exemption. § 541.100. The standalone executive exemption mirrors the standalone administrative exemption: they both have conjunctive elements laying out an employee's duties. *Compare id.*, *with* § 541.200. While the elements are conjunctive in the standalone exemptions, they are disjunctive when paired with a high salary. § 541.601(c). Analogously, then, employees may be exempt as *administrative* HCEs even if they do not meet all the elements in the standalone administrative exemption. So an employee could be an administrative HCE if the employee customarily and regularly performed "office or non-manual work directly related to the management or general business operations of the employer," § 541.200(a)(2), even if the employee's duties did not "include[] the exercise of discretion and independent judgment with respect to matters of significance," § 541.200(a)(3).

We examine the record here to determine if there is any genuine dispute of material fact as to whether Smith performed one exempt duty. We later will analyze whether that performance was customary and regular, then whether it was the proper form of office or non-manual work.

The question before us is narrower than the one we often face, which is the primary-duties question for these overtime exemptions. *E.g.*, *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 335 (5th Cir. 2017). Indeed, little caselaw has

addressed exempt duties in the HCE context.  Although the two contexts are distinguishable in key respects, we draw from our standalone-exemption precedents where the exemptions overlap.

Ochsner argues the facts are undisputed that Smith regularly performed several administrative duties that were "directly related to management or general business operations."  § 541.201(b).  For brevity, we refer to these as the "directly related" duties.  Duties that are directly related involve "work directly related to the assisting with the running or servicing of the business" as opposed to production-focused work.  § 541.201(a).

For context, Section 201(b) provides in its entirety:

> (b) *Work directly related to management or general business operations includes, but is not limited to, work in functional areas* such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; *procurement*; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.  Some of these activities may be performed by employees who also would qualify for another exemption.

§ 541.201(b) (emphasis added).  Here, we begin and end with procurement.

Ochsner argues that Smith, as an organ procurement coordinator, engaged in literal procurement for the company.  We recognize, though, that job titles are "insufficient to establish the exempt status of an employee." § 541.2.  Smith argues that his involvement with procurement was trivial.  He cites testimony indicating that he was "strictly confined to following [certain] exact procedures" for organ procurement.  This argument, though, mistakenly assumes that procurement is only an exempt duty if the procurement included the exercise of discretion and independent judgment with respect to matters of significance (*i.e.*, the last part of the standalone exemption, § 541.200(a)(3)).  Whether Smith was confined to certain procedures is not material to whether

8

he performed an exempt, directly-related duty. This fact would cut against finding that Smith exercised discretion and independent judgment, *see* § 541.202(e), but to define directly-related duties as necessarily including significant discretion would render Section 541.200(a)(3) surplusage.

Only a nonprecedential opinion of this court has analyzed whether an employee performed exempt duties in the context of the HCE exemption. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349 (5th Cir. 2015). We examine the opinion for its ability to persuade. The *Zannikos* plaintiffs were marine superintendents who oversaw oil transfers, "monitored the loading and unloading of cargo," and reported on the transfers' compliance with company policies and national safety standards. *Id.* at 351. The plaintiffs also oversaw independent inspectors and the "line blending" process in which oil and gas "are combined and moved onto a ship based on specifications." *Id.* We held that the plaintiffs were not administratively exempt because their "primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance." *Id.* at 359. Nevertheless, we held that the plaintiffs' primary duties were directly related to the business's customers, and therefore, that element of the administrative exemption was established. *Id.* at 354. Because the plaintiffs primarily performed work directly related to the business's customers, we concluded the employees also "customarily and regularly perform[ed] any one or more of the exempt duties or responsibilities" of an administrative employee. *Id.* at 359 (quoting § 541.601(a)). We agree with the *Zannikos* court's analysis, but that opinion leaves us with some analytical work to do.

In *Dewan*, we considered only the standalone administrative exemption, reviewing whether summary judgment for the defendants was appropriate. 858 F.3d at 335–40. The plaintiffs, a group of "mud engineers," argued that they did not perform non-manual work for the business or its customers. *Id.*

at 336. We recognized the distinction between producing a commodity, whether it be a good or service, and administering business affairs. *Id.* Applying that principle, we held that material facts were in dispute over whether the mud engineers' primary duties were directly related to management, business operations, or customers. *Id.* at 336–37. Unlike the employees in *Zannikos*, the mud engineers in *Dewan* did not oversee "work performed by the customers' employees, contractors, and equipment." *Id.* at 338. Additionally, the mud engineers' jobs did not involve "compliance with health and safety standards," and the mud engineers did not "engage[] in tasks likely to qualify as the general administrative work applicable to the running of any business." *Id.* (quotation marks omitted).

It is undisputed that Smith spent substantial time in the donor coordinator role. It is also undisputed that a regular part of his job was receiving calls about potential donations, intaking information, and presenting the information to the surgeon, although the parties dispute how much Smith curated the information he shared with surgeons. This was the first step in the organ procurement process.

In another one of Smith's main roles, he managed the literal procurement of the organs by transporting them. Smith agrees that his "job was to retrieve organs to sell to transplant customers." Smith testified that based on the organ's location, a procurement coordinator would decide whether to use ground or air transportation. Smith did not play a role in negotiating the contracts with the transport companies to set prices, but when it was time to transport an organ, it was the coordinator's role "to make [the transport] happen." This included calling the transport company to see if a limousine or airplane was available. Relatedly, Smith spent literal procurement time on the ground, taking the team to the airport, going into the operating room, and reporting back to the coordinator and surgeon in Louisiana.

Both the donor coordinator and transportation job duties were directly related to Ochsner's business operations.  By that, we mean the duties were "directly related to assisting with the running or servicing of the business." § 541.201(a).  Smith was not engaged in either manufacturing or sales.  *See id.* He worked in the "functional area[]" of procurement for the business, facilitating the acquisition of organs for Ochsner's transplant services.  *See* § 541.201(b).  We do not attempt to define all the boundaries of procurement, only those relevant in this case.  One definition is "the acquisition of goods or services at the best possible price, in appropriate quantity, at the right time and place, etc."  *Procurement*, OXFORD ENGLISH DICTIONARY (3d ed. 2007). Procurement in the context of obtaining the right organs efficiently would not be described in quite those terms, but Smith was certainly involved in the acquisition of something critical for Ochsner's services.

In crafting the highly compensated employee exemption, the Department of Labor made it easier on both employers and courts. § 541.601(c).  We need not conduct a particularly "detailed analysis of the employee's job duties."  *Id.*  Smith's level of compensation is the principal consideration.  *See id.*  In addition, like in *Zannikos* and unlike in *Dewan*, the plaintiff here performed one of the specifically enumerated exempt duties. § 541.201(b); *Zannikos*, 605 F. App'x at 353.

### B.    *Customarily and regularly performs the duties*

"Customarily and regularly" is defined by regulation and "means a frequency that must be greater than occasional but which, of course, may be less than constant.  Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."  § 541.701.

A review of Smith's appellate brief reveals that Smith concedes he customarily and regularly took calls about organ donations, relayed the information to surgeons, and planned for the transport of those organs. As discussed, Smith focuses his argument on whether those are exempt duties rather than whether he performed them with sufficient regularity. Smith does argue that he did not customarily and regularly perform other relevant job duties such as interviewing job candidates and ordering supplies. We need not examine other job duties, though, because just one exempt duty suffices. § 541.601(a). Smith does not present any evidence that he did not customarily and regularly engage in procurement. That leaves no dispute that Smith meets this element of the exemption.

### C.   Office or non-manual work

To fall under either the standalone or HCE exemption, an employee's primary duty must include office or non-manual work. § 541.200(a)(2) (standalone); § 541.601(d) (HCE). The district court determined there was no dispute that Smith's primary duty involved the performance of office or non-manual work directly related to the management or general business operations. Smith argues on appeal that the facts are in dispute. In particular, Smith cites to parts of the record showing that he had to perform physical, manual tasks.

Ochsner argues that Smith waived this argument by not presenting it to the district court. Smith replies that there was no waiver because the burden of proof was on Ochsner to establish this element of the administrative exemptions. Smith declares it would be "absurd" to find that he waived an element of Ochsner's affirmative defense "where Ochsner itself made no competent argument, and where Ochsner pointed to no undisputed evidence to rebut, regarding a required, essential element of its affirmative defense."

## No. 18-31264

In examining a waiver argument, we start with the rule that "the scope of appellate review on a summary judgment order is limited to matters presented to the district court." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). Therefore, "if a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."[2] *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (quotation marks and citation omitted).

Although Smith is correct that the burden to prove exempt status is on Ochsner, Smith never made the argument before the district court that his work was primarily manual. In fact, he seems to have admitted that much of his work is non-manual in his briefing to the lower court. Arguing that he engaged in non-exempt production work, he stated, "Production work covers much non-manual work." Smith argued to the district court that his work was not directly related to management or to general business operations. That argument concerned whether Smith met the qualifications in Section 541.601(a). The office or non-manual work element, though, is set out separately in Subsection (d). § 541.601(d). Smith did not make this argument in his district court brief. The argument that he primarily performed manual labor is therefore not properly before us.

As a matter of law, Smith was an exempt highly compensated employee. AFFIRMED.

---

[2] Caselaw does not consistently distinguish between "waiver" and "forfeiture," although the terms are analytically distinct. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks omitted). We have labeled an issue unintentionally ignored in district court "waived," *Keenan*, 290 F.3d at 262, and elsewhere, "forfeited," *McManaway v. KBR, Inc.*, 852 F.3d 444, 455 (5th Cir. 2017). The parties here say "waiver." Whatever the term, we will discuss whether to decide an issue not presented to the district court.