**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1730
_____

DIANE PEREZ, individually and on behalf of all others similarly situated,
Appellant

v.

EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS HOLDING COMPANY
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-19-cv-07752)
District Judge: Julien X. Neals
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 4, 2024
_____

Before: SHWARTZ, RENDELL, and AMBRO, <u>Circuit Judges</u>.

(Filed: March 6, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Diane Perez appeals the District Court's order that granted reconsideration and entered summary judgment in favor of her employer, Defendants Express Scripts, Inc. ("ESI") and Express Scripts Holding Company, on her claims for overtime pay under federal and state wage laws. For the following reasons, we will affirm.

I[1]

A

ESI manages and administers pharmacy benefit programs for employers, commercial health plans, and governmental entities. Among other things, ESI communicates with its clients (and employees of those clients) about prescription drug coverage and related products.

As a Senior Program Communications Manager ("SCM"), Perez provided "operational support" for ESI's communications campaigns.[2] App. 114. Perez testified that she was responsible for "helping to assemble letter templates," App. 114, "consulting" with the product team about the campaigns, and "communicat[ing] information" between the product team, creative team, regulatory team, account team,

---

[1] We recount here the undisputed material facts. Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). We presume that when a plaintiff has testified under penalty of perjury as to her employment duties, "she surely understood the significance of her testimony in the context of th[e] case," and will not hold there to be an issue of material fact "merely because [she] request[s] that we do so." Smith v. Johnson, 593 F.3d 280, 285 (3d Cir. 2010).

[2] Perez's testimony refers to ESI's "communications," "campaigns" and "marketing campaign[s]" interchangeably. See App. 69.

production team, and email vendor to ensure the campaigns were timely and accurate. App. 69-74. Perez also "[d]evelop[ed] and nurture[ed] relationships with stakeholders," "creat[ed] . . . user-friendly tools" to produce uniform campaign mailings, and "[p]ropos[ed] and implement[ed]" time- and cost-saving operating procedures. App. 397-98. Perez earned over $100,000 per year and routinely worked more than forty hours per week without receiving overtime pay.

B

Perez brought this collective action to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and the New Jersey Wage and Hour Law, N.J.S.A. § 34:12-56, et seq. ("NJWHL"). Defendants moved for summary judgment, which the District Court initially denied. Perez v. Express Scripts, Inc., No. 19-7752, 2022 WL 2981002, at *11 (D.N.J. July 28, 2022) ("Perez I"). The Court later reconsidered that ruling and granted Defendants summary judgment because it recognized that in initially denying Defendants summary judgment, it considered only the administrative exemption, "did not properly review whether [Perez] was exempt . . . under the highly compensated employee exemption," and thus, incorrectly concluded that the FLSA's overtime protections covered Perez's job. Perez v. Express Scripts, Inc., No. 19-7752, 2023 WL 2570145, at *3-4 (D.N.J. Mar. 20, 2023) ("Perez II").

Perez appeals.

II[3]

The FLSA seeks to, among other things, "eliminate . . . 'oppressive working hours.'" Helix Energy Sols. Grp., v. Hewitt, 598 U.S. 39, 44 (2023) (citation omitted). To this end, the FLSA requires employers to pay their employees overtime wages when they work more than forty hours per week. 29 U.S.C. § 207. The FLSA, however, exempts from the overtime pay requirements employees who work in a "[(1)] bona fide executive, [(2)] administrative, or [(3)] professional capacity[.]"[4] 29 U.S.C. § 213(a)(1). In addition, the regulations include an exemption for highly compensated employees ("HCE exemption"). See 29 C.F.R. § 541.601.

---

[3] The District Court had jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction pursuant to 28 U.S.C. § 1291.
We review an order granting a motion for reconsideration for abuse of discretion, considering legal conclusions de novo and factual findings for clear error. Max's Seafood Café ex rel. Lou—Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999). Because an appeal of an order resolving a motion for reconsideration "brings up the underlying judgment for review," Quality Prefabrication v. Daniel J. Keating Co., 675 F.2d 77, 78 (3d Cir. 1982), and the order for which reconsideration is sought here arises from a motion for summary judgment, we review the summary judgment ruling de novo. Andrews v. Scuilli, 853 F.3d 690, 696 (3d Cir. 2017). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We draw all reasonable inferences in the nonmovant's favor. Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011) (internal quotation marks and citation omitted).
[4] The employer bears the burden of showing that the employee is exempt from receiving overtime. See 29 C.F.R. §§ 541.100, 541.200, and 541.300; cf. Mazzarella v. Fast Rig Support, LLC, 823 F.3d 786, 790 (3d Cir. 2016) (the employer "bear[s] the burden of proving plainly and unmistakably that the employee qualifies for the FLSA exemption" (internal quotation marks and citations omitted)).

4

During the relevant period, the HCE exemption applied to any employee who (1) earned more than $100,000 annually;[5] (2) primarily "perform[ed] office or non-manual work"; and (3) "customarily and regularly perform[ed] any one or more of the exempt duties of an executive, administrative or professional employee[.]"[6] 29 C.F.R. § 541.601(c)-(d). Because "[a] high level of compensation is a strong indicator of an employee's exempt status," 29 C.F.R. § 541.601(c), an employer must show only that the employee regularly performs at least one of the duties that other statutorily exempt employees perform to invoke the HCE exemption. Helix, 598 U.S. at 46 (explaining that the HCE exemption's duty test is met where the employee "'regularly perform[s]' just one (not all)" of the responsibilities of an executive, administrative, or professional employee (quoting 29 C.F.R. § 541.601(a))); see also 29 C.F.R. § 541.601(c) (providing that under the HCE exemption, the "need for a detailed analysis of the employee's duties" is "eliminat[ed]" and "[a] highly compensated employee will qualify for exemption if the employee customarily and regularly performs any one or more of the

---

[5] The Department of Labor attempted to raise the threshold to $134,004 in 2016 but was enjoined. See Nevada v. U.S. Dep't of Labor, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2016); see also 84 Fed. Reg. 51230 at 51231 (Sept. 27, 2019) (noting that "the Department ha[d] continued to enforce the $100,000 level [since 2004] in light of the district court's invalidation of the 2016 final rule"). The $100,000 threshold remained applicable until January 1, 2020. See 84 Fed. Reg. 51235 (Jan. 1, 2020) (raising the threshold to $107,432).

[6] "Whether employees' 'particular activities excluded them from the overtime benefits of the FLSA is a question of law.'" Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 872 n.6 (3d Cir. 2015) (quoting Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986)).

5

exempt duties or responsibilities of an executive, administrative, or professional employee")); 69 Fed. Reg. 22174 (2004) (explaining that the HCE exemption uses a more flexible duties standard, resulting in greater exemptions). Although an employee's performance of "isolated or one-time tasks" will not establish that the employee is "customarily and regularly" engaged in such work, the employee need not perform such work "constant[ly]" for it to be considered a customary and regular duty. 29 C.F.R. § 541.701.

It is undisputed that Perez earned at least $100,000 per year and primarily performed office or non-manual work, and no party asserts that Perez performed executive or professional duties. Therefore, we must determine whether the undisputed record shows that Perez "customarily and regularly" performed one or more tasks that fall within the duties of an administrative employee. 29 C.F.R. § 541.601(a).

Under the FLSA, a highly compensated employee performs duties that fall within the administrative employee exemption when, for example, the duties "customarily and regularly" involve the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. §§ 541.200, 541.601(c).[7] An employee's work "directly relate[s]

---

[7] The administrative exemption requires a finding that the employee's "primary duty" (a) "is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (b) "includes the exercise of discretion and independent judgment with respect to matters of significance," 29 C.F.R. §§ 541.200 (a)(2)-(3). While this is a conjunctive test that is focused on the employee's "primary duty," when the exemption is

6

to the management or general business operations of the employer or [its] customers" if it "directly relate[s] to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). This includes work in areas such as "quality control," "advertising," "marketing," "public relations," "legal and regulatory compliance," and "similar activities." 29 C.F.R. § 541.201(b).

Perez coordinated communications to ESI's clients about significant matters, including changes to prescription coverage and methods to obtain covered prescription medications. Perez testified that to accomplish these tasks, she consulted with employees in other ESI departments to ensure she understood their goals and that they understood the deadlines associated with the communications. Perez not only coordinated the workflow between departments, but she also brought errors to her boss's attention, including those with possible legal or regulatory implications, and conveyed timelines to ensure that accurate communications were timely relayed to ESI's clients.[8] Perez also "[p]ropos[ed] and implement[ed]" cost-saving standard operating procedures. App. 397-98. Thus, Perez's undisputed "customary and regular" duties directly related to ESI's

---

considered in connection with the HCE exemption, only one of the elements must be proven to be performed "customarily and regularly." 29 C.F.R. § 541.601(a); see also Smith v. Ochsner Health Sys., 956 F.3d 681, 685 (5th Cir. 2020) ("While the [administrative exemption] elements are conjunctive in the standalone exemption[], they are disjunctive when paired with a high salary." (citing 29 C.F.R. § 541.601(c))).

[8] The fact that (1) the finished products typically stemmed from templates; and (2) employees from other departments determined certain substantive aspects of the communications and gave final approval is of no consequence. See Smith, 956 F.3d at 687 (whether the plaintiff was "confined to certain procedures is not material to whether he performed an exempt, directly-related [administrative] duty").

7

general business operations.  See Reich v. John Alden Life Ins. Co., 126 F.3d 1, 12 (1st Cir. 1997) (holding that "work of this nature—disseminating information to the marketplace, understanding customers and competitors, and gathering available information to be used in putting together proposals and packages that are appropriate for those customers—is directly related to [the employer's] operations[.]").

Perez argues that her role coordinating the creation of communication campaigns consisted of "production" duties, as opposed to "administrative" duties, therefore putting her outside the ambit of the HCE exemption.  While it is true that a non-manufacturing employee can be considered a "production" employee where her job is to produce "the very product or service that the employer's business offers to the public, Reich v. John Alden Life Ins. Co., 126 F.3d 1, 9 (1st Cir. 1997) (internal citation omitted), it is undisputed that ESI's product is "pharmacy benefit plans," App. 388, and   Perez was "in no way involved in the design or generation of [those] p[lans]s, the very product that the enterprise exists to produce and market."  Reich, 126 F.3d at 9 (internal citation omitted). Accordingly, she cannot be "considered [a] production employee[]."  Id.; see also Jones v. New Orleans Reg'l Physician Hosp. Org., Inc., 981 F.3d 428, 434 (5th Cir. 2020) ("the [employees] did not write, produce, or sell [the company's] product: insurance policies.").  Therefore, the District Court correctly concluded that Perez was subject to the HCE exemption and thus not entitled to overtime.  As a result, Defendants are entitled to summary judgment.

## III

For the foregoing reasons, we will affirm.