# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2020

Lyle W. Cayce
Clerk

No. 19-31027

Bill Jones, on behalf of himself and all others
similarly situated; Jennifer Branch, on behalf of
herself and all others similarly situated; Laura
Romero, on behalf of herself and all others similarly
situated; Melissa Breaux; Ivette M. Perez; Nicole
Crowder,

*Plaintiffs—Appellants*,

*versus*

New Orleans Regional Physician Hospital
Organization, Incorporated, doing business as Peoples
Health Network,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-8817

Before Higginbotham, Jones, and Higginson, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:

The Appellants are former white-collar employees of Appellee
Peoples Health Network who filed suit for themselves and others alleging
violations of the Fair Labor Standards Act. Appealing the district court's

No. 19-31027

summary judgment in favor of the employer, they contend principally that their job duties did not fall within an administrative employee exemption to the statute. *See* 29 C.F.R. Sec. 541.200(a). Upon careful review of the arguments and relevant portions of the record, we AFFIRM.

## I. BACKGROUND

The Plaintiffs filed a purported collective action[1] under the FLSA against their former employer, New Orleans Regional Physician Hospital Organization, L.L.C. ("Peoples Health"). Peoples Health is a managed care company that offers a Medicare Advantage Plan insurance product to eligible individuals. The Plaintiffs claim that Peoples Health intentionally misclassified them as "salaried" and "exempt" to avoid paying overtime wages. Peoples Health contends that each Plaintiff was administratively exempt from the FLSA's overtime requirements.

An employee qualifies as administratively exempt if three facts can be shown. First, the employee must be compensated on a salary or fee basis at a rate that exceeds an amount set by regulation. Second, the employee's primary job duties must involve the performance of office or non-manual work directly related to the management or general business operations of the employer or its customers. Finally, the employee's primary job duties must include exercising discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

The six Plaintiffs held three different job titles in two departments at Peoples Health: four were Contracting Specialists, one was an Operations Specialist, and one was a Pharmacy Part D Specialist.

---

[1] Although the district court "conditionally certified" the case as a collective action, only six plaintiffs remain.

2

No. 19-31027

Four Plaintiffs were Contracting Specialists who were responsible for signing up physicians and hospital-based providers who wished to join Peoples Health's network. They worked within the Network Development Department, which is responsible for establishing and maintaining Peoples Health's network of healthcare providers for plan members. Their core function was to recruit healthcare providers, with a focus on the providers executing contracts.

The Operations Specialist was responsible for working on projects designed to improve operational processes and efficiencies. Although the Plaintiffs recognize that the scope of this position included a broad range of activities, they assert that actual execution required consistent direction from more senior leaders.

The Pharmacy Part D Specialist worked within the Pharmacy Department, which handles payments to pharmacies for filling members' prescriptions. The Pharmacy Part D Specialist's responsibilities included: preparing documentation for Centers for Medicare and Medicaid Services ("CMS") audits; reviewing claims and prescription drug events ("PDEs"); and analyzing and researching compliance issues. Although the Plaintiffs agree with these general statements of responsibility, they claim that the actual tasks performed were ministerial.

After discovery, the district court granted Peoples Health's motion for summary judgment and found the Plaintiffs administratively exempt from the FLSA's overtime requirement. The Plaintiffs timely appealed.

No. 19-31027

## II. DISCUSSION

This court reviews a grant of summary judgment *de novo*, applying the same standard as the district court. Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Depree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009) (internal citations omitted); *see* FED. R. CIV. P. 56. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citation omitted). The court views all facts and evidence in the light most favorable to the non-movant. *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 675 (5th Cir. 2010).

In a non-jury case, such as this one, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991). The district court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Jones v. United States*, 936 F.3d 318, 321–22 (5th Cir. 2019) (internal quotations omitted).

The Plaintiffs take issue with each aspect of the district court's adverse conclusions as to each factor necessary to the FLSA administrative exemption. They also contend that the court erroneously imbedded findings of disputed facts in its summary judgment analysis. We address each of these contentions.

### A. Salary Basis

At the first step of the administrative exemption analysis, *see* 29 C.F.R. § 541.200(a), the Plaintiffs assert that Peoples Health did not

compensate them on a salary basis, but instead treated them like hourly employees. We disagree.

The district court had ample support from the record to conclude that the Plaintiffs were salaried employees. First, the Plaintiffs do not contest that Peoples Health paid them enough to far surpass the regulation's minimum weekly wage requirement. These six employees' annual salaries ranged from about $56,000 to over $68,000. Every year, Peoples Health's human resources department reviewed and certified each employee's job description to ensure accuracy and that the employee qualified as FLSA exempt. The record contains no evidence that any Plaintiff complained of his or her job duties or exempt status during his or her employment. Additionally, two of the Plaintiffs testified that they understood that they would receive the same, fixed amount of pay each week regardless of their hours worked.

The Plaintiffs point to three types of evidence showing they were treated like hourly employees despite Peoples Health's official designation: payroll records, testimony from senior managers, and Peoples Health's failure to follow timekeeping practices. Each argument fails.

First, payroll records supposedly show instances in which the salary of two Plaintiffs was docked in half-day increments. They argue that employers may only dock pay for exempt employees in full day increments (the "no pay-docking rule"). 29 C.F.R. § 541.602(b)(1). But they do not refute evidence that in each instance a deduction was expressly permitted notwithstanding the no pay-docking rule. Specifically, the half-day reductions occurred when the Plaintiffs were either about to leave employment or on leave pursuant to the Family and Medical Leave Act ("FMLA"). The relevant regulations explicitly permit partial payments to exempt employees for time worked in the last week of employment and

during periods where leave is taken under the FMLA.[2]    29 C.F.R.
§§ 541.602(b)(6)–(7).

Second, the Plaintiffs claim that statements from three senior managers support their claim that Peoples Health actually paid them as hourly employees.  In fact, these managers only expressed the belief that exempt employees had to use time off (e.g., vacation time) if they worked under forty hours in a week.  This testimony simply does not help the Plaintiffs.  As the district court observed, the FMLA (1) does not prohibit an employer from requiring its employees to track their attendance at work; (2) does not prohibit an employer from requiring a forty-hour workweek from a salaried employee; (3) allows for deductions from pay when a salaried employee does not work a forty-hour week so long as those deductions are not for absences of less than a day; and (4) allows an employer to require employees to make up missed time for a partial day or otherwise use appropriate leave when not working a full day. *See Cowart v. Ingalls Shipbldg., Inc.*, 213 F.3d 261, 265 (5th Cir. 2000).

Third, the Plaintiffs argue that Peoples Health violated its written timekeeping policy by not permitting salaried employees to record time in excess of forty hours per week.  Even if this were true, it is not evidence that the relevant employees were not treated as exempt, salaried employees.

---

[2] Even if Peoples Health did not perfectly comply with the regulations in these instances—and we see no evidence that they did not—the examples provided are insufficient to show an actual practice of improper deductions. When determining whether an actual practice of improper deductions exists, the relevant regulation regards both the number of improper deductions and the time period in which they were made as relevant considerations.  29 CFR § 541.603.

No. 19-31027

## B. Relationship to Management or Business Operations

The second requirement of the administrative exemption is that the employees' primary job duties must directly relate to the management or general business operations of Peoples Health or its customers. *See* 29 C.F.R. § 541.201. Like the district court, we hold this condition was satisfied.

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). This does not mean, however, that exempt employees must spend more than fifty percent of their time performing exempt work. 29 C.F.R. § 541.700(b). "The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

### 1. Contracting Specialists

The undisputed duties of Contracting Specialists primarily involve recruiting and contracting service providers for the network. The Plaintiffs argue that the district court erred in three ways in analyzing the Contracting Specialists' primary job duties. We disagree.

First, they attempt to analogize the role of the Contracting Specialist in Peoples Health's business model to an employee on a manufacturing production line or in retail sales. *See Dewan v. M-I, LLC*, 858 F.3d 331, 337 (5th Cir. 2017) (recognizing that the administrative exemption applies to employees involved with "administering the business affairs of the enterprise, not with producing the commodity of the business" (quotations omitted)). But the Contracting Specialists did not write, produce, or sell Peoples Health's product: insurance policies. *See Cheatham v. Allstate Ins.*

*Co.*, 465 F.3d 578, 585 (5th Cir. 2006) ("An insurance company's product is its policies, and Appellants' duties did not include writing and selling insurance."). Instead, their role was supporting and servicing the company's business operations by maintaining and enlarging its provider network.

Second, the Plaintiffs assert that the Contracting Specialists' duties do not fall within the officially or traditionally recognized categories of general business operations. *See* 29 C.F.R. § 541.201(b). But these regulatory categories are illustrative, not exhaustive. Further, as the district court recognized, the job duties of Contracting Specialists include activities comparable to the listed categories of advertising, marketing, and research.

Third, the Plaintiffs claim that the district court conflated the position's essentiality with its relation to business operations. This mistake, they argue, means that *any* employee meets the "directly related" standard because almost any type of employee is arguably essential. The Plaintiffs' argument is an uncharitable reading of the district court opinion, which explicitly recognized, as do we, that the work of Contracting Specialists was *both* "directly related to the general business operations of Peoples Health" *and* "essential" to these operations.

## 2. Operations Specialist

The Plaintiffs contend that the Operations Specialist's job duties do not directly relate to the general operations of Peoples Health. This argument has no merit. Those job duties included (1) understanding new products and processes, (2) establishing project timelines, (3) coordinating activities for new and continuing projects, (4) serving as liaison between departments and documenting processes, (5) observing department processes and brainstorming potential improvements, and (6) dispensing advice to managers on how to improve department processes or workflows.

These job duties directly relate to the general business operations of Peoples Health.

### 3. *Pharmacy Part D Specialist*

The Pharmacy Part D Specialist also easily meets the requirements under this step of the analysis. Her job duties were to "prepare documentation for CMS audits, review claims [and] PDE's as well as analyze [and] research outlying issues with regards to continual compliance," and to "perform all tasks within CMS guidelines, claims processing guidelines, company policies, and state/federal regulatory requirements." On their face, these duties directly relate to the general business operations of Peoples Health. In addition, as the district court noted, the job duties of the Pharmacy Part D Specialist are comparable to several illustrative categories listed in the relevant regulation, including auditing, insurance, quality control, and legal and regulatory compliance.

## C. Exercising Discretion and Independent Judgment with Respect to Matters of Significance

Whether the Plaintiffs' primary job duties included "the exercise of discretion and independent judgment with respect to matters of significance" is the third factor in the administrative exemption. 29 C.F.R. § 541.202(a). To assist in making this determination, 29 C.F.R. § 541.202(b) lists several non-exhaustive considerations. Importantly, "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). Thus, an employee need not exercise final decision-making authority to fulfill the regulation's standard. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). The employee does, however, need to exercise more discretion "than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other

sources." 29 C.F.R. § 541.202(e). The district court rejected Plaintiffs' arguments that each of their positions lacks sufficient discretion and independent judgment.

*1. Contracting Specialists*

The Contracting Specialists' primary job duties included the exercise of discretion and independent judgment with respect to matters of significance. As one of the Plaintiffs explained, his job as a Contracting Specialist included building relationships, explaining why prospective members should join the network, and implementing a "thoughtful well-planned strategy." The Plaintiffs do not meaningfully disagree that their work included identifying, communicating and networking with, and recruiting providers. These duties required the exercise of discretion and independent judgment regarding the significant, even essential, matter of maintaining Peoples Health's provider network.

Nevertheless, the Plaintiffs assert that Contracting Specialists did not exercise discretion and independent judgment. Specifically, they argue that: (1) Supervisors identified market needs and final decisions were made by the Contract Committee; (2) Contracting Specialists had no independent authority to resolve issues with service providers; (3) Contracting Specialists used contract templates provided and approved by the legal department; (4) Contracting Specialists lacked discretion to develop individualized sales pitches; and (5) Contracting Specialists had no independent authority to manage projects.[3] As the relevant regulation makes clear, these arguments

---

[3] Note, however, that a close review of the record shows evidence of more responsibility than the Plaintiffs suggest. For instance, one of the Plaintiffs admits to researching companies' provider information and working to determine additional information about hospital groups. And one of the supervisors stated that the Contracting Specialists "could dictate of [sic] how things are going to flow."

are unavailing: "The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment." 29 C.F.R. § 541.202(c). We further agree with the district court that the Contracting Specialists meet the requirements under this step of the analysis even though they "did not have the final authority to negotiate and execute a binding contract."

*2. Operations Specialist*

The evidence confirms that the Operations Specialist was essentially an internal consultant within Peoples Health and acted with enough discretion and independent judgment to satisfy this step of the analysis.[4] The Plaintiffs acknowledge that the Operations Specialist's role included working on productivity improvements, developing and documenting policies and procedures, and reviewing regulatory specialist guides and converting them into processes for other departments. Notably, the regulation specifically references a management consultant to illustrate job duties that lack final authority but nevertheless involve discretion and independent judgment. 29 C.F.R. § 541.202(c).

---

[4] The Operations Specialist described her own role as "assessing need, making recommendations to change current processes or creating new processes, creating strategies to remediate need, and executing approved strategies under the direction of [various managers]." A supervisor also spoke highly of her, claiming she was "a real key person on developing" an important project who "would probably be making some very good recommendations" and "presenting her work."

### 3. *Pharmacy Part D Specialist*

The Pharmacy Part D Specialist also meets the requirements at this step of the analysis. Her job duties were indisputably important, and she acknowledged her own exceptional performance and limited supervision. She described her job responsibilities as including problem solving, data analysis, and maintaining the integrity of data. And she certainly acted independently when reviewing CMS rejections and resolving PDEs. The district court correctly concluded that the Pharmacy Part D Specialist exercised discretion and independent judgment with respect to matters of significance.

## D. District Court's Standard of Review

Having concluded *de novo* that the evidence creates no genuine issue of material fact and thus supports the district court's grant of summary judgment, we also conclude that the district court applied the correct standard of review.

The district court recites the preponderance of the evidence standard eight times in its decision. The Plaintiffs construe this to mean that the district court did not apply the summary judgment standard. But the court made clear in its conclusion that it was applying the summary judgment standard to Peoples Health's burden of proving the administrative exemption by a preponderance of the evidence. The Plaintiffs conceded at oral argument that, if the case were remanded for a bench trial, they would have no additional evidence to present to the judge that the district court has not already considered and found wanting. Based on the evidence already presented, to the extent that it "could support more than one inference," the district court has already concluded that it "could not possibly lead to a different result" at trial.

No. 19-31027

The Plaintiffs imply that the district court "fell into serious error" by referring in its decision to evidence presented in one Plaintiff's separate retaliation case against Peoples Health.  But the Plaintiffs do not explain why, beyond their mere assertion of impropriety, this is a serious error.[5]  More important, the record in this case, which was cited throughout the district court opinion, independently establishes the facts necessary to grant summary judgment to Peoples Health.

### III. CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's grant of summary judgment to Peoples Health.

---

[5] They do not claim, for example, that information from the retaliation case would be inadmissible at trial.