# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 4, 2023

Lyle W. Cayce
Clerk

_____

No. 22-40791

_____

James Chapoy,

*Plaintiff—Appellant*,

*versus*

Union Pacific Railroad, *Individually and as Successor-in-Interest to*
Southern Pacific Transportation Company,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:20-CV-169

_____

Before King, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

This is a Federal Employers Liability Act ("FELA") case brought by appellant James Chapoy, who worked for Union Pacific Railroad and its predecessor between 1972 and 2011. In 2020, Chapoy sued Union Pacific for FELA negligence under 45 U.S.C. § 51 after being diagnosed with asbestosis in 2012. The district court, ruling on a Federal Rule of Civil Procedure 59(e)

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40791

Motion to Alter or Amend a Judgment, granted summary judgment in favor of Union Pacific. It concluded that Chapoy's lawsuit was untimely under FELA's three-year statute of limitations, tolled by agreement of the parties for one year. Finding the agreement to be unambiguous, we hold that there remains a question of fact regarding when tolling terminated as to Chapoy, rendering summary judgment improper. Accordingly, we VACATE and REMAND for proceedings consistent with this opinion.

I.

In performing his duties for Union Pacific for almost forty years, Chapoy alleges he was exposed to asbestos. He was officially diagnosed with asbestosis in 2012.

Years earlier, in 2001, in an effort to resolve hundreds of asbestos claims, counsel for claimants (including Chapoy) and counsel for Union Pacific reached a mutual solution to address limitations concerns: a Master Statute of Limitations Tolling Agreement ("Tolling Agreement"). As described by Chapoy, this arrangement "saved both parties . . . money and stress . . . and allowed both parties to remove any limitations concern in any individual claim by addressing limitations on a global basis." The agreement was signed by counsel for claimants, Bruce Halstead, and the national lead counsel for Union Pacific, Tracy Cowan, who worked together amicably to settle many cases over the years.

The parties do not dispute that the Tolling Agreement was a valid contract. Nor do they dispute the date on which the statute of limitations commenced. Instead, the crux of this appeal centers on the proper interpretation of the phrase "subject to extension by agreement of the parties" in paragraph three of the Tolling Agreement. The Tolling Agreement states in relevant part:

2

1. The parties agree that for the purpose of statute of limitations accrual, as that term is defined and interpreted under the Federal Employer's Liability Act, 45 U.S.C. § 51, et seq., each claimant's accrual date shall be deemed to be "tolled" or legally suspended for one year from the effective "tolling date", as defined in paragraph[s] two and three.

2. All claims included and "tolled" under the Agreement shall have an effective "tolling date" on the date that the claim notification was mailed (properly post marked or labeled for private delivery) by counsel for claimants in Houston, Texas.

3. For purposes of this Agreement, *the tolling period*, in any specific case or group of cases, *shall terminate on the one[-]year anniversary of the "tolling date", subject to extension by agreement of the parties.*

. . .

5. Nothing herein shall be construed to prevent either party from terminating this Agreement in the future. If either party desires to withdraw from the Agreement, 30 days written notice shall be given. Nothing herein shall be construed to restrict or otherwise limit plaintiff's counsel's practice of law. The parties understand and agree that they, in all likelihood will disagree on the evaluation of certain claims and that formal litigation may be necessary to resolve these claims.

(emphasis added).

In Chapoy's view, ample evidence suggests that both parties viewed the Tolling Agreement as "extended indefinitely by agreement" based on informal communications between counsel. Union Pacific claims that any agreement to extend must be in writing, and that even if a written agreement were not required, there is no evidence to suggest that Union Pacific agreed to extend the Tolling Agreement to Chapoy beyond the one-year termination date in paragraph three.

The district court granted summary judgment to Union Pacific, determining that the FELA statute of limitations was jurisdictional, and that Chapoy could not recover because his claim was not filed before the three-year statute of limitations bar, regardless of whether the parties agreed to extend. The case was reassigned, and pursuant to a Rule 59(e) Motion to Alter or Amend a Judgment, the district court concluded that although the original motion for summary judgment erroneously concluded that the statute of limitations was jurisdictional, Chapoy was still not entitled to recover.

The district court concluded that the one-year agreement to toll in paragraph one did not save Chapoy from the three-year FELA statute of limitations: "To hold otherwise would render the clause terminating the agreement after one year meaningless. To a reasonable reader, the agreement provides that the statute of limitations is tolled for one year, and the parties can opt out earlier or agree to extend it later if they choose." Though it did not address whether it found evidence of an agreement to extend, the district court concluded that the Tolling Agreement terminated after one year, so Chapoy was still over five years late in the filing of his lawsuit. The district court concluded that Chapoy's claim was barred by the statute of limitations and that summary judgment in favor of Union Pacific was proper.

## II.

We review a grant of summary judgment *de novo*. *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017). "When summary judgment is sought on an affirmative defense, as here, the movant 'must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor.'" *Id.* (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Further, as this court recently noted, "[u]nder the FELA, awarding summary judgment to the defendant railroad is appropriate

4

'[o]nly when there is a complete absence of probative facts' to support a jury verdict in the plaintiff's favor." *Gray v. Ala. Great S. R.R.*, 960 F.3d 212, 216 (5th Cir. 2020) (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)). "This standard is highly favorable to the plaintiff and recognizes that the FELA is protective of the plaintiff's right to a jury trial." *Id.* (quoting *Wooden v. Mo. Pac. R.R.*, 862 F.2d 560, 561 (5th Cir. 1989)).

## III.

There is a three-year statute of limitations for claims brought under FELA. 45 U.S.C. § 56. Specifically, "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." *Id.* Before proceeding to the parties' arguments, we note that the district court correctly concluded that FELA's statute of limitations is not jurisdictional and can therefore be waived or extended by agreement of the parties.

The Supreme Court has held that if limitations are jurisdictional, courts must enforce them "even if the other party has waived any timeliness objection." *United States v. Wong*, 575 U.S. 402, 409 (2015). But a statute of limitations is jurisdictional only if Congress has offered a "clear statement" of its intent to make it so. *Id.* at 409-10. "[M]ost time bars are nonjurisdictional." *Id.* at 410. This is so "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)." *Id.* "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id.* Nothing in 45 U.S.C. § 56 or elsewhere in FELA reveals that Congress meant the FELA limitations provision to be jurisdictional.

Further, the Supreme Court has expressly held, at least twice, that the FELA limitation period is not inflexible and may be extended beyond three

years.  *See Burnett v. N.Y. Cent. R.R.*, 380 U.S. 424, 427 (1965); *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 234-35 (1959).  Accordingly, the Tolling Agreement was a valid contract extending the statute of limitations for FELA claims.

Turning to the parties' contentions, Chapoy argues that his claim was continuously tolled from October 2014, when he submitted his claim for asbestosis to Union Pacific through his counsel, until July 2020, when Chapoy gave written notice pursuant to paragraph five that he was withdrawing from the Tolling Agreement.  Chapoy reads paragraph three as a provision addressing automatic termination "subject to extension by agreement of the parties."  Chapoy contends that this language unambiguously allows the parties to extend the tolling agreement informally, and the court should consider the parties' course of dealing and course of performance to confirm whether the parties indeed extended the tolling agreement.

Union Pacific argues that any agreement to toll the statute of limitations must be in writing, and there was no written agreement by the parties to toll the limitations period beyond the one-year period in the Tolling Agreement.  It states that the district court found that Chapoy "adduced no evidence at all suggesting that Union Pacific ever agreed to extend the Tolling Agreement to Appellant, let alone agreed to an indefinite extension as argued."  Further, Union Pacific urges that any argument that the parties were required to affirmatively take action to withdraw from the Tolling Agreement ignores the explicit text of the Tolling Agreement that it "shall" terminate in one year.  Claiming the Tolling Agreement is unambiguous, Union Pacific argues that we may not consider any parol evidence, including the parties' course of dealing and performance.

Texas law guides our interpretation of the contract. *See Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003). Under Texas law, "[o]ur primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties" as expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). "Contract terms are given their plain, ordinary, and generally accepted meanings", and contracts are to be construed as a whole, "to harmonize and give effect to all the provisions." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). A contract is ambiguous if it is "susceptible to more than one reasonable meaning after application of established rules of construction." *Univ. Health Servs. Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). But "courts will enforce an unambiguous instrument as written" because ordinarily, "the writing alone will be deemed to express the intention of the parties." *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981).

Here, the Tolling Agreement is unambiguous. Paragraph one establishes a tolling period of one year. Paragraph two defines the tolling date as the date that the claim notification was mailed. Paragraph three, the source of contention, specifically states that the tolling period shall terminate on the one-year anniversary of the tolling date, "subject to extension by agreement of the parties." The plain language of paragraph three creates an automatic termination date of one year unless the parties agree otherwise. The Tolling Agreement does not specify the form that agreement must take. It does, however, speak to withdrawing from the agreement in paragraph five. There, it states that a party may withdraw with "30 days written notice" given.

The express requirement of "written notice" for termination in paragraph five, but the lack of such a requirement in paragraph three, gives

rise to a presumption that the parties did not intend to require written notice under paragraph three. *See Frew v. Janek*, 820 F.3d 715, 729 n.60 (5th Cir. 2016) (applying Texas law) (citing *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744 (7th Cir. 1996) ("[W]hen parties to the same contract use such different language to address parallel issues . . . it is reasonable to infer that they intend this language to mean different things.")); *see also Vendura v. Boxer*, 845 F.3d 477, 485 (1st Cir. 2017) ("When a contract uses different language in proximate and similar provisions, we commonly understand the provisions to illuminate one another and assume that the parties' use of different language was intended to convey different meanings.") (internal citation and quotations omitted)). This is not to suggest that differently worded provisions will inevitably receive different constructions. Sometimes parties rephrase and reinforce what they agree to, and sometimes omissions and elisions are purely accidental. But given the proximity of paragraphs three and five (on the same page and separated by only one paragraph) and the closeness of the issues they address (termination and tolling), we can only infer that the parties' decision to omit a writing requirement in paragraph three was deliberate. To the extent the district court concluded otherwise, that was error.

Accordingly, the question on remand is whether the parties agreed, in writing or otherwise, to extend the tolling period. This requires the district court to look at the evidence put forth by the parties to determine whether such an agreement existed.[1]

---

[1] Such an agreement may be express or implied under Texas law. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding*, 480 S.W.2d 607, 609 (Tex. 1972). An implied agreement may be established by looking to the parties' course of dealing and performance, as Chapoy urges. *See, e.g., Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex. App.—Amarillo 1984, no writ); *Double Diamond, Inc. v. Hilco Elec. Coop., Inc.*, 127 S.W.3d 260, 265-67 (Tex. App.—Waco 2003, pet. denied); *Celadon Trucking Servs.,*

No. 22-40791

IV.

This question of fact—whether the parties agreed to extend the Tolling Agreement as to Chapoy such that it did not terminate after one year—rendered summary judgment in favor of Union Pacific improper. Accordingly, we VACATE and REMAND for the district court to address this question in the first instance.

_____

*Inc. v. Lugo's Sec. Agency*, No. 04-05-00018-CV, 2005 WL 2401886, at *2 (Tex. App.—San Antonio 2005, no pet.).